# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| DOE I, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-07517-BLF<br><br>**ORDER GRANTING MOTION TO COMPLETE THE ADMINISTRATIVE RECORD** |

In this immigration mandamus case under the Administrative Procedure Act, Plaintiffs Doe I, Doe II, Doe III, and Doe IV have filed a motion to complete the administrative record. *See* Mot., ECF 23. Defendants oppose this motion. *See* Opp'n, ECF 27. The Court heard oral arguments regarding this motion on July 1, 2021. For the reasons stated below, the Court GRANTS this motion.

## I.  BACKGROUND

The following facts are undisputed. In December 2012, Defendant United States Citizenship and Immigration Services ("USCIS") approved a petition by Doe I for O-1 nonimmigrant status for the time period of January 2013 through January 2016. Compl., Ex. 7, O-1 Approval, ECF 1-7. On November 24, 2014, Doe I submitted an I-140 Immigrant Petition for Alien Worker, seeking designation as a noncitizen of extraordinary ability. Decl. of David I. Holtzman ("Holtzman Decl.") ¶ 2, ECF 23-1. On December 4, 2014, USCIS approved his application. Holtzman Decl. ¶ 3.[1] In January 2015, Doe I filed a I-485 application to become a lawful permanent resident. Holtzman Decl., Ex. 2, I-485, ECF 23-1. Over three years later, USCIS

---

[1] The immigration status of Doe II, Doe III, and Doe IV is dependent on the immigration status of Doe I. *See* Compl. ¶¶ 27-30, ECF 1.

sent Doe I a Notice of Intent to Revoke ("NOIR") Doe I's I-140 Petition approval and designation as a noncitizen of extraordinary ability on February 20, 2018. Holtzman Decl. ¶ 5; Ex. 3, NOIR, ECF 23-1. Doe I responded to the NOIR with over 150 pages of new evidence on March 22, 2018. Holtzman Decl. ¶ 6. USCIS issued a final revocation of Doe I's I-140 Petition on or about June 27, 2018. Holtzman Decl. ¶ 10, Ex. 8, Final Revocation, ECF 23-1. Doe I's I-485 application was denied on June 28, 2021. Holtzman Decl., Ex. 9, I-485 Denial, ECF 23-1.

While contesting the NOIR for his first I-140 Petition, Doe I filed a second I-140 Petition on April 25, 2018. Holtzman Decl. ¶ 7. USCIS responded on May 31, 2018, with a request for evidence. Holtzman Decl. ¶ 8. Doe I submitted additional evidence on August 24, 2018. Holtzman Decl. ¶ 9. USCIS denied Doe I's second I-140 Petition on October 2, 2018. Holtzman Decl. ¶ 13.

On June 23, 2021, Donald D. Moody, the Section Chief of USCIS's Nebraska Service Center (where Doe I's application and petitions were processed) submitted a declaration to this Court certifying to the best of his knowledge and belief that the administrative record constitutes "a true, correct, and complete copy of the whole record that was before the adjudicating officer, including all documents considered directly or indirectly, when the adjudicating officer revoked the November 2014 I-140 petition, denied Doe I's I-485 application, and denied the April 2018 I-140 petition." Decl. of Donald D. Moody ¶ 15, ECF 33-1. Moody similarly certified the completeness of the administrative records for Doe II, Doe III, and Doe IV. *Id.* ¶ 16.

## II. LEGAL STANDARD

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). "Courts, however, may grant a motion to complete the administrative record where the agency has not submitted the 'whole' record." *Sharks Sports & Ent. LLC v. Fed. Transit Admin.*, No. 18-CV-04060-LHK (SVK), 2020 WL 511998, at *1 (N.D. Cal. Jan. 31, 2020) (citing 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party")). The "whole" record "consists of all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (citation omitted) (emphasis in original); *see also Citizens to Preserve Overton Park, Inc. v.*

*Volpe*, 401 U.S. 402, 420 (1971) (holding that courts must review "the full administrative record that was before the [agency] at the time [it] made [the] decision"). "An agency may not exclude information it considered on the grounds that it did not rely on that information." *Sharks Sports*, 2020 WL 511998, at *1 (citing *People ex rel. Lockyer v. U.S. Dep't of Ag.*, No. C05-03508 EDL, 2006 WL708914, at *2 (N.D. Cal. Mar. 16, 2006)). "An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted). Plaintiffs must present clear evidence to the contrary to rebut this presumption. *Id.* (citations omitted). Plaintiffs need not show bad faith or improper motive to rebut the presumption of completeness. *Sharks Sports*, 2020 WL 511998, at *1 (citing *Lockyer*, 2006 WL 708914, at *2).

To meet the clear evidence standard, a plaintiff must 1) "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record," and 2) "identify the materials allegedly omitted from the record with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record[.]" *Gill v. Dep't of Just.*, No. 14-CV-03120-RS (KAW), 2015 WL 9258075, at *5 (N.D. Cal. Dec. 18, 2015) (quoting *Winnemem Wintu Tribe v. U.S. Forest Service*, No. 2:09-CV-01072-KJM-KJN, 2014 WL 3689699, at * 10 (E.D. Cal. July 24, 2014) (citation omitted)).

**III.   DISCUSSION**

**A.   Plaintiffs Have Rebutted the Presumption of Administrative Regularity**

Plaintiffs argue that the complete absence of any mention or explanation for the over three-year delay in adjudicating Doe I's I-485 application—more than six times longer than the typical processing time—and subsequent revocation of his I-140 petition, is a prima facie showing of incompleteness of the record. Mot. 6-8; Reply 3-5, ECF 30. Plaintiffs also point to the absence of any communications from agency personnel below the Director of the USCIS Nebraska Service Center (Defendant Loren Miller) as evidence that the administrative record does not include all documents and materials directly or indirectly considered. Mot. 8-9. Defendants argue that USCIS

3

has the authority to revoke previous visa petition approvals at any time and that Doe I's I-140 Petition was reexamined in the normal course of the adjudication of his I-485 application. Opp'n 4-6. Defendants further argue that Plaintiffs have not identified specific documents that are absent from the record, which is the catch-22 standard Defendants would like to enforce for rebutting the presumption of regularity. Opp'n 6-8. The Court finds that Plaintiffs have identified reasonable, non-speculative grounds for their belief that the documents were considered by the agency and not included in the record and identified the materials allegedly omitted from the record with sufficient specificity.

Plaintiffs do not dispute that USCIS has the authority to revisit an I-140 petition. Reply 5; *see also* 8 U.S.C. § 1155 ("The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him"). What Plaintiffs object to is the lack of any explanation or acknowledgment of the unusually long delay—six times longer than typical—that led to a complete reversal of the prior finding that Doe I was an individual of extraordinary ability, which Defendants had found twice previously for his O-1 nonimmigrant status and initial I-140 Petition approval. Mot. 7-8. "[E]very tribunal, judicial or administrative, has some power to correct its own errors or otherwise appropriately to modify its judgment, decree, or error." *Gorbach v. Reno*, 219 F.3d 1087, 1102 (9th Cir. 2000) (en banc) (Thomas, Browning, T.G. Nelson, Hawkins, and Tashima, J.J., concurring) (quotation and citation omitted). "In the administrative context, this right is generally limited to a short period after the making of the decision and before an appeal has been taken or other rights vested. *Id.* (quotation and citation omitted). "What is a short and reasonable period will vary with each case, but absent unusual circumstances, the time period would be measured in weeks, not years." *Cabo Distrib. Co. v. Brady*, 821 F. Supp. 601, 613 (N.D. Cal. 1992) (quoting *Gratehouse v. United States*, 512 F.2d 1104, (Ct. Cl. 1975)). Here, Defendants waited over three years, a great deviation from the typical processing time.

The Court finds the decision in *Chaparro Navarro v. United States Department of Homeland Security* instructive here. --- F.Supp.3d ----, No. 17-CV-06404-DMR, 2020 WL 1557425 (N.D. Cal. Apr. 1, 2020). In *Chaparro Navarro*, USCIS granted the plaintif's petition for

4

U nonimmigrant status. 2020 WL 1557425, at *3. Six months later, the plaintiff petitioned for derivative U nonimmigrant status on behalf of her father. *Id.* A year and a half later, USCIS issued a notice of intent to revoke the plaintiff's two-year-old U nonimmigrant status on the ground that "the approval was in error." *Id.* The Court found this decision arbitrary and capricious and reversed the revocation of the plaintiff's U nonimmigrant status. *Id.* at *13.

> While Defendants acknowledge that reconsideration of an agency's decision "should take place within a reasonable amount of time following the initial decision," they do not identify the existence of any "unusual circumstances" that would justify a nearly two-year delay in notifying [plaintiff] of its intent to revoke her status based on error. They also make no attempt to argue that the error was not readily discoverable. In fact, Defendants are notably silent as to why USCIS decided to revisit its initial grant of U nonimmigrant status to [plaintiff]. In sum, Defendants offer no reason or argument for waiting two years before deciding to revoke the original grant of status. Instead, they make the sweeping assertion that USCIS should be permitted to revoke a petition for error at any point during the entire four-year period of U nonimmigrant status, regardless of the reason for revocation. Defendants' position is untenable, as it ignores both "the desirability of finality in an agency's decision," and the reliance interests at issue when U nonimmigrant status is granted.

*Id.* (internal citations omitted).

Even though *Chaparro Navarro* decides the merits of the case and not a motion to complete the administrative record, the reasoning of *Chaparro Navarro* applies to the context of this case as well. *Chaparro Navarro* holds that a record's silence on a years-later reversal of a previously granted form of immigration status is arbitrary and capricious. Accordingly, it is reasonable, and non-speculative, for Plaintiffs to believe that there are documents in the record that shed light on why Defendants reversed their three-year-old decision on Doe I's I-140 Petition and the finding that he is an individual of extraordinary ability. If this was an unreasonable belief, then it suggests that Defendants decision here may, under *Chaparro Navarro*, be arbitrary and capricious.

The case Defendants cite supports Plaintiffs' position. In *Herrera v. USCIS*, the plaintiff's I-140 Petition was revoked after the plaintiff made several statements in an interview for her I-485 legal permanent resident application that called into question the validity of the original I-140 Petition approval. 571 F.3d 881, 883-84 (9th Cir. 2009). The interviewing officer's notes, as well as a memorandum created from those notes, was part of the administrative record. *Id.* at 889 n.8.

1  The Ninth Circuit also stated, "it was the interview itself, not the internal summaries of it, that
2  caused the agency to seek revocation," and the plaintiff was aware of the contents of the interview
3  "because she gave the interview." *Id.* That is what is missing from this record: whatever it is that
4  caused Defendants to revoke Doe I's I-140 Petition.

5  Plaintiff's specific identification of the lack of any records from employees subordinate to
6  the Director of the Nebraska Service Center further rebuts the presumption of administrative
7  regularity. "Courts have rejected attempts to limit administrative records to those documents that
8  were before an agency's senior decisionmakers." *Sharks Sports*, 2020 WL 511998, at *4. "For
9  example, a court in this District rejected an argument, apparently made in the context of a motion
10 to include internal agency memoranda and similar documents, that 'only those documents that
11 reached [the agency's] most senior administrators were in fact 'considered.'" *Id.* (quoting *Nat.*
12 *Res. Def. Council v. Gutierrez*, No. C 01-0421 JL, 2008 WL 11358008, at *6 (N.D. Cal. Jan. 14,
13 2008)). Agencies must include "all documents and material directly or indirectly considered by the
14 agency" in the administrative record." *Thompson*, 885 F.2d at 555. It is reasonable, and non-
15 speculative, to believe that agency employees other than the Director of a massive service center
16 were involved in the review of Plaintiffs' case, and by pointing to the absence of any
17 communications from any non-Director level employees, Plaintiffs have sufficiently identified
18 materials allegedly omitted from the record.

19 Defendants argue that Plaintiffs have provided "no evidence that any particular document
20 relevant to this case but absent from the administrative record exists, *and* that USCIS considered
21 such documents, directly or indirectly." Opp'n 6 (emphasis in original). The Court finds this an
22 impossibly high, and incorrect, standard. Demanding Plaintiff identify individualized documents
23 that were considered but they do not have creates an unattainable remedy because it would force
24 Plaintiffs to already have what they are seeking.

25     **B.**    **If Defendants Cannot Supplement the Administrative Record to Explain the Delay in Revoking Doe I's I-140 Petition, They May Be Required to Submit to a Deposition**
26
27 Plaintiffs request that the Court order USCIS to submit a deponent to testify on behalf of
28 the agency as to why it revisited the decision to grant Doe I's I-140 Petition. Mot. 9-10. In their

reply brief, Plaintiffs clarify that they request this relief if Defendants cannot supplement the records with documents explaining the delay. *See* Reply 7. ("Alternatively, if USCIS cannot do so, the Court should require USCIS to produce a person most qualified on Doe I's petition for deposition."). Defendants argue that even if the Court finds that the administrative record is incomplete, it should reject Plaintiffs' request. Opp'n 9-10. The Court DEFERS consideration so that it may review a more developed discovery request in light of the circumstances after compliance with this order.

The Ninth Circuit has recognized "that even when judicial review is confined to the record of the agency, as in reviewing informal agency actions, there may be circumstances to justify expanding the record or permitting discovery." *Pub. Power Council v. Johnson*, 674 F.2d 791, 793 (9th Cir. 1982). "When there is 'such a failure to explain administrative action as to frustrate effective judicial review,' the court may 'obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary." *Id.* at 793-94 (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam)); *see also Asarco, Inc. v. U.S.E.P.A.*, 616 F.2d 1153, 1160 (9th Cir. 1980) (reviewing court should go outside administrative record to consider evidence relevant to the substantive merits of the agency action "for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds for decision").

Courts in this district have found that waiting years to revoke a noncitizen's nonimmigrant status without explanation is arbitrary and capricious. *Chaparro Navarro*, 2020 WL 1557425, at *13. The current version of the administrative record in this case is silent as to the three-year-long delay in seeking revocation of Doe I's I-140 Petition. Absent supplementation of the record by Defendants, Plaintiffs may choose to proceed under the reasoning in *Chaparro Navarro* and ask this Court to find Defendants' action arbitrary and capricious or may continue to seek additional explanation for the agency action through a deposition. The Court invites further elaboration on the scope of discovery if Plaintiffs continue to seek such relief.

## IV. ORDER

For the reasons stated herein, Plaintiff's motion to complete the administrative record is GRANTED. Defendants must complete the administrative record by producing and including all documents directly or indirectly before the agency, including records from employees subordinate to the Director of the Nebraska Service Center and records regarding any decision to review the application of Doe I, whether for the first or subsequent times, by August 31, 2021.

**IT IS SO ORDERED.**

Dated: August 4, 2021

_____
BETH LABSON FREEMAN
United States District Judge