United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

DOE I, et al.,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 20-cv-07517-BLF

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REMANDING CASE TO CUSTOMS AND IMMIGRATION SERVICES**

[Re: ECF Nos. 72, 75]

In this case, Plaintiff Doe I challenges the revocation of approval of his Form I-140, the denial of his second Form I-140, and the denials of the Forms I-485 for him, his spouse, and two minor children. Before the Court are cross-motions for summary judgment filed by Plaintiffs (ECF No. 72 ("PMSJ")) and the Government (ECF No. 75 ("GMSJ"). Each party has filed a second brief supporting their motion and opposing the others' motion. *See* ECF Nos. 76 ("PReply"), 77 ("GReply"). The Court held a hearing on the cross-motions on March 31, 2022. ECF No. 79. For the reasons discussed on the record and explained below, the Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for summary judgment and DENIES the Government's motion for summary judgment.

## I. LEGAL FRAMEWORK

Because the legal framework that governs adjudication of Plaintiffs' immigration petitions is critical to the Court's decision and the factual background in this case, the Court begins with that discussion.

The Immigration and Nationality Act ("INA") and relevant regulations provide for visas

for individuals who can demonstrate "extraordinary ability in the sciences, arts, education, business or athletics" so that they can enter the United States to work in their area of extraordinary ability. 8 U.S.C. § 1153(b)(1)(A); 8 C.F.R. § 204.5(h). There are generally two types of such visas: temporary, non-immigrant visas ("O" visas); and permanent, immigrant visas ("EB" visas).

Employers file petitions for O-1 visas for their employees through Form I-129; employees themselves cannot self-petition for O-1 visas. 8 C.F.R. § 214.2(O)(2)(i). An applicant is entitled to an O-1 visa if she demonstrates "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and who is coming temporarily to the United States to continue work in the area of extraordinary ability." *Id.* § 214.2(O)(1)(ii)(A)(1). "Extraordinary ability" is "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." *Id.* § 204.5(h)(2).

An individual can self-petition for an EB-1 visa through a Form I-140 if she has "extraordinary ability in the sciences, arts, education, business, or athletics, which has been demonstrated by sustained national or international acclaim" and her "achievements have been recognized in the field through extensive documentation." 8 U.S.C. § 1153(b)(1)(A)(i). An EB-1 applicant must show, as with an O-1 applicant, that she is trying to enter the United States to "continue work in the area of extraordinary ability." *Id.* § 1153(b)(1)(A). The EB-1 petitioner must separately show that her "entry into the United States will substantially benefit prospectively the United States." *Id.* If an individual's I-140 is approved and she obtains an EB-1 visa, she (and her spouse and minor children) may subsequently seek lawful permanent resident status (commonly known as a "green card") through Form I-485.

Adjudication of applications for an "extraordinary ability" visa occurs through a two-step process. *See Kazarian v. U.S. Citizenship & Immigration Servs.*, 596 F.3d 1115 (9th Cir. 2010). As is relevant here, the Government first determines if the petitioner has, by a preponderance of the evidence, provided either (1) evidence of a one-time achievement (like a Nobel Prize or Olympic gold medal), or (2) evidence satisfying at least three of the following ten regulatory criteria:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;
>
> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;
>
> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;
>
> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;
>
> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;
>
> (vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;
>
> (vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;
>
> (viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;
>
> (ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or
>
> (x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3)(i)–(x). If the criteria "do not readily apply to the [applicant's] occupation," she "may submit comparable evidence" of eligibility. *Id.* § 204.5(h)(4); *Donskoy v. U.S. Citizenship & Immigration Servs.*, 2021 WL 5240224, at *2 (N.D. Cal. Nov. 11, 2021). If the applicant satisfies this first step, she has met an initial evidentiary burden for eligibility for extraordinary ability classification. *Donskoy*, 2021 WL 5240224, at *2; *Kazarian*, 596 F.3d at 1119–20.

Second, if an applicant satisfies the initial step of the inquiry, the Government at step two

then conducts a "final merits determination," weighing the evidence submitted to determine whether it demonstrates extraordinary ability. *Kazarian*, 596 F.3d at 1119–20; *Donskoy*, 2021 WL 5240224, at *2. The Government must evaluate whether the applicant is someone "who has extraordinary ability in the sciences, arts, education, business, or athletics," 8 C.F.R. § 214.2(o)(1)(i), and whether she is "one of the small percentage who have arisen to the very top of [her] field of endeavor," *id.* § 214.2(o)(3)(ii). These regulatory criteria have been described as "extremely restrictive." *Kazarian*, 596 F.3d at 1120 (quoting *Lee v. Ziglar*, 237 F. Supp. 3d 914, 918 (N.D. Ill. 2002)).

An approved EB-1 visa may be revoked "at any time" for "what [the Government] deems to be good and sufficient cause." 8 U.S.C. § 1155. There is good and sufficient cause for revocation if "the evidence of record at the time the decision was issued . . . warranted . . . [a] denial" of the application. *Love Korean Church v. Chertoff*, 549 F.3d 749, 754 n.3 (9th Cir. 2008). "Revocation of the approval of a petition . . . will be made only on notice to the petitioner," and that the petitioner "must be given the opportunity to offer evidence in support of the petition . . . and in opposition to the grounds alleged for revocation of the approval." 8 C.F.R. § 205.2(b).

## II. BACKGROUND

Plaintiff Doe I, a Russian national, sought and obtained a temporary, nonimmigrant O-1 visa on December 9, 2012. *See* AR2400.[1] Almost two years later on November 24, 2014, Doe I filed a Form I-140 to self-petition for classification as an alien of "extraordinary ability" under 8 U.S.C. § 1153(b)(1)(A) and obtain an EB-1 visa. AR687–694. The Government approved Doe I's I-140 petition on December 4, 2014, granting him status as an alien of extraordinary ability. Doe I and his family (Plaintiffs Does II–IV) subsequently submitted Forms I-485 to adjust their status to lawful permanent residents. AR386–91, 1217–22, 1244–49, 1270–75. While those applications were still pending, Immigration and Customs Enforcement ("ICE") asked Customs

[1] Citations to pages in the administrative record, ECF No. 69, will omit the CIS prefix and any leading 0's. For example, this citation refers to the page in the administrative record that is Bates stamped CIS_00002400.

and Immigration Service ("CIS") to withhold adjudication of the status adjustment applications pending an ICE investigation into Doe I. AR2067. CIS did so and extended that pause multiple times. AR2068–71, 2938.

During that pause, CIS's Fraud Detection and National Security unit began to reexamine Doe I's file and status. CIS identified two potential concerns with the previous approval of Doe I's approved Form I-140 petition: (1) "the business endeavor [Doe I] claims he wishes to continue to work for in the US no longer exists," and (2) "[t]he initial evidence in the I-140 petition does not adequately establish his eligibility for the benefit sought." AR2074. The fraud unit referred the approved petition back to the original adjudicating office in Nebraska with a request to re-evaluate Doe I's eligibility. *Id.*

On February 20, 2018, CIS issued to Doe I a Notice of Intent to Revoke ("NOIR") his approved I-140, which had been approved just over three years earlier on December 4, 2014. AR665–75. The NOIR first laid out the regulatory framework for granting status to aliens of extraordinary ability. It first stated that an individual seeking classification as an alien of extraordinary ability must satisfy at least three of ten regulatory criteria. AR665–66. The NOIR then stated that if the individual satisfied at least three of the ten regulatory criteria, "USCIS will then consider the evidence in the context of a final merits determination." *Id.* at 666. In a section entitled "Analysis of Criteria," the agency in step-by-step fashion analyzed each of the ten criteria, finding that Doe I met none of the ten criteria. *Id.* at 667–73. In a subsection labeled "Final Merits Determination," CIS explained that because Doe I did not meet at least three of the ten criteria, "[CIS] [would] not conduct a final merits determination." *Id.* at 674. CIS concluded that Doe I's petition was subject to revocation, and Doe I was given thirty days to submit evidence in opposition to revocation. *Id.* at 675. Doe I timely submitted additional 75 pages of evidence in March 2018. AR475–664.

On June 27, 2018, CIS revoked Doe I's approved I-140 petition. AR443–74. In a reversal of its initial findings in the February 2018 NOIR, the agency determined that Doe I had "provided documentation sufficient to establish" that he satisfied three of the regulatory criteria. AR445–71. CIS, however, then conducted a final merits determination. *Id.* at 471–73. The agency determined

at that step of the analysis at Doe I was not an alien of extraordinary ability because Doe I had not demonstrated "sustained national or international acclaim" and that he was "one of that small percentage who has risen to the very top of [his] field of endeavor." *Id.* at 471. CIS thus revoked the approved petition. *Id.* at 474. Because Doe I's approved Form I-140 was revoked, CIS also denied the Form I-485 petitions of Doe I and his family. AR1213–14, 1240–41, 1266–67.[2]

This lawsuit followed, and the parties have now filed cross-motions for summary judgment.

## III. LEGAL STANDARD

Summary judgment is the "appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts it did" because in reviewing an agency's final action under the Administrative Procedure Act, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985). Instead, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision that it did." *Id.*

In reviewing final agency action under the Administrative Procedure Act, the court must uphold the agency's decision unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A "court simply ensures that the agency has acted within a zone of reasonableness." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). The court does not "substitute its judgment for that of the agency" and instead only "consider[s] whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Arbitrary and capricious review is "highly deferential, presume[s] the agency action to be valid and requires affirming the agency action if a reasonable basis exists for the decision." *Kern Cnty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). A reviewing court thus "uphold[s] the [agency's] findings unless the evidence

[2] After receiving the February 2018 NOIR, Doe I filed a second Form I-140. CIS issued a Request for Evidence and, after receiving Doe I's response, denied the petition at the final merits determination step. AR2–24.

presented would compel a reasonable finder of fact to reach a contrary result." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003).

## IV. DISCUSSION

Much of the parties' briefing concerns CIS's three-year delay in revoking Doe I's approved Form I-140 petition and the merits of the evidence that Doe I submitted in support of the petition. The Court need not reach those issues, however, because it concludes that Doe I did not receive proper notice that CIS would revoke his approved Form I-140 based on a final merits determination. The Court considers the issue of notice before determining the appropriate remedy.

### A. Notice to Doe I

8 U.S.C. § 1155 allows the Government to "revoke the approval of any petition . . . for what [the Government] deems to be good and sufficient cause." The implementing regulations state that "[r]evocation of the approval of a petition . . . will be made only on notice to the petitioner," and that the petitioner "must be given the opportunity to offer evidence in support of the petition . . . and in opposition to the grounds alleged for revocation of the approval." 8 C.F.R. § 205.2(b).

The Court finds that the Government did not follow this procedure when it revoked Doe I's approved Form I-140 petition. The NOIR dated February 20, 2018 stated that the basis for CIS's intent to revoke Doe I's approved petition was that Doe I did not meet at least three of the ten statutory criteria at step one of the *Kazarian* analysis. *See* AR678–85 (analyzing the ten criteria and finding that none were satisfied based on the evidence submitted by Doe I). CIS's ultimate revocation decision, however, found that Doe I met three of the ten criteria and instead revoked Doe I's approved petition at step two of the *Kazarian* analysis—the "final merits determination." *See* AR445 (finding three criteria satisfied), 471–74 (conducting a final merits determination, concluding it was not satisfied, and revoking on that basis). Because the ultimate reasons for CIS' revocation of Doe I's petition were not congruent with the reasons it stated in the NOIR, CIS did not abide by the plain regulatory requirements for revocation of Doe I's petition. *See* 8 U.S.C. § 1155; 8 C.F.R. § 205.2(b). In other words, Doe I was not provided the opportunity to "offer evidence . . . in opposition to the grounds alleged for revocation of the petition" when CIS revoked

United States District Court
Northern District of California

his approved Form I-140 petition for different reasons than were specified in the NOIR.

The Government's arguments in response to the inadequate notice are not compelling. First, at the hearing, the Government argued that the NOIR did indicate that even if Doe I met three of the regulatory criteria, he still needed to satisfy the agency's final merits determination at step two of the *Kazarian* analysis. It is true that the NOIR mentions the final merits determination in two locations—first, in the section describing the generic legal framework for adjudicating these types of visa applications, *see* AR677; and second, in a single paragraph following CIS's analysis of the ten statutory factors, *see* AR685. These two mentions of step two are insufficient to put Doe I on notice that CIS intended to revoke his approved petition at step two. The first mention is a generic statement of law, not a statement that CIS believed that it had grounds to revoke Doe I's petition at that step. The second mention underscores that Doe I was not on notice of revocation at step two—CIS expressly states that because it found Doe I "did not meet at least three of the ten criteria, . . . [CIS] will not conduct a final merits determination." AR685. Neither of these statements informs Doe I that the Government believed it had grounds to revoke his approved petition at step two of the *Kazarian* analysis.

Second, in supplemental briefing, the Government urges the Court to find that Doe I waived this argument by not squarely raising it in his briefing. ECF No. 87 ("GSupp.") at 1. The Government is correct that Doe I's briefing did not explicitly raise this argument in those terms. The Court, however, declines to find it waived. Doe I's Complaint and briefing, as the Government concedes, did contend that the NOIR did not satisfy the regulatory standards for revocation of an approved petition under 8 U.S.C. § 1155 and 8 C.F.R. § 205.2(b). *See* ECF No. 1 ("Compl") ¶¶ 2a (challenging "Defendants' unlawful revocation, without good and sufficient cause [and without following the governing law on revocation]" of the petition), 56–60 (citing 8 U.S.C. § 1155 and 8 C.F.R. § 205.2(b) and alleging that Doe I was not given opportunity to provide evidence opposing the "grounds alleged for revocation of the approval"); PMSJ at 16–17 (same). The Court finds these statements sufficient for Doe I to avoid waiver.[3]

[3] Defendants have filed an administrative motion to strike the Government's supplemental brief, arguing that the Government impermissibly raised arguments in opposition to this notice issue

Third, the Government argues that the notice deficiency was not prejudicial to Doe I because it issued a Request for Evidence on May 31, 2018 in connection with Doe I's *second* I-140 petition that "squarely addressed evidentiary issues with the final merits determination." GSupp at 1–2. That Request for Evidence stated in bold text:

> Additionally, meeting the minimum regulatory criteria outlined above, alone will not establish eligibility for the E11 immigrant classification. Any evidence submitted in response to this request, should also articulate how the evidence establishes that the self-petitioner possesses the required high level of expertise for the E11 immigrant classification.

AR145 (errors replicated from original). Because this Request for Evidence in connection with the second petition was issued 27 days before CIS issued the final decision revoking Doe I's initial approved petition and Doe I had an opportunity to respond to the Request for Evidence, the Government contends that "between the two documents" CIS provided sufficient notice to Doe I that he did not meet the second *Kazarian* step. *See* GSupp. at 1–2. The Court disagrees. Doe I was required to respond to the February 2018 NOIR within 30 days. *See* AR675. He timely responded by late March 2018. *See* AR475 (response stamped "MAR 22 2018"). Even if the Request for Evidence in connection with Doe I's second petition could have in theory put him on notice of grounds for revocation of the original petition, the Request for Evidence came after Doe I's opportunity to respond to the NOIR had already passed. The Request for Evidence accordingly did not put Doe I on notice at the time his response to the NOIR was due that CIS intended to revoke his original petition at the final merits determination.[4]

Because Doe I was not on notice of the grounds on which CIS intended to revoke his originally approved Form I-140 petition, the revocation of the approved petition was arbitrary and capricious. Because the denial of Doe I–IV's Form I-485 petitions were based solely on the

---

rather than focusing solely on the appropriate remedy. *See* ECF Nos. 88 (administrative motion), 89 (Government opposition). The administrative motion is DENIED. The Court has considered the arguments in the Government's supplemental brief to which Plaintiffs object and, as discussed herein, finds that Plaintiffs are still entitled to relief.

[4] Because of this sequence of events, the Court need not consider whether in fact the Request for Evidence in connection with his second petition (if it had been issued to Doe I prior to his opportunity to respond to the NOIR had passed) could have put him on notice of the additional intended grounds for revocation of his original petition.

United States District Court
Northern District of California

revocation of Doe I's previously approved I-140, those denials were also arbitrary and capricious.

**B. Appropriate Remedy**

The final question for the Court to confront is the appropriate remedy. The Court requested and received supplemental briefing from the parties regarding the appropriate remedy, in the event the Court found inadequate notice to Doe I. *See* ECF No. 84 ("PSupp."); GSupp.

Unsurprisingly, the parties disagree on the appropriate remedy. Plaintiffs urge the Court to grant extensive relief. First, they urge the Court to (1) vacate both the February 2018 NOIR and the final decision revoking Doe I's previously approved Form I-140; (2) reopen the denials of Plaintiffs' Form I-485 petitions, which were denied solely due to revocation; and (3) remand to CIS only as to step two of the *Kazarian* analysis. PSupp. at 1. Plaintiffs urge the Court to grant further relief to restore what they characterize as the "*status quo ante*." *Id.* at 2. They say that granting their relief would give (1) Doe I a presently approved I-140 petition and a pending timely Form I-485 application, and (2) Does II–IV presently pending Forms I-485. *Id.* at 2–3. Restoring the status quo ante further requires the Court, in Plaintiffs' view, to order CIS to issue Plaintiffs unexpired "replacement documents" (evidencing entitlement to "advance parole plus employment authorization"), which Plaintiffs previously possessed, that would allow Plaintiffs to travel back into the United States.[5] *Id.* at 3–4.

The Government argues that "remand, and remand alone, is the appropriate remedy." GSupp. at 2. Remand would allow CIS to "proceed consistent with the Court's opinion including to issue a new NOIR or RFE proving additional explanation why Doe I does not meet particular standards and offering him the opportunity to respond before revocation." *Id.* The Government opposes limiting remand to step two of the *Kazarian* analysis. *Id.* The Government also opposes Plaintiffs' additional requests for relief. The Government says the Court should not completely vacate the revocation and (to the extent it can be vacated) the NOIR because of the sensitive interests at issue in the immigration context and potential "unpredictable" consequences. *Id.* The

[5] At the hearing, Plaintiffs' counsel advised the Court that Plaintiffs had traveled outside the United States to attend to a family medical emergency and that they have not been able to return to the United States.

United States District Court
Northern District of California

Government further opposes Plaintiffs' request to "restore them to the status they held on February 19, 2018" and require the Government to issue them "unexpired replacement documents." *Id.* at 2–3. The "status quo ante" is measured at the time of revocation, not the time the NOIR was issued, the Government says. The Government concludes by contending that compelling the Government to issue documents to Plaintiffs is an "extraordinary[] request[]" that would go beyond the Court's power of judicial review of the revocation decision at issue, particularly where the Plaintiffs here left the country of their own volition or accepted voluntary departure. *Id.* at 3–5.

The Court agrees with the Government. First, the Court's relief will be restricted to the decision to revoke Doe I's approved Form I-140 and the direct results of that decision. The Court has found that the decision to revoke Doe I's previously approved Form I-140 petition—and the decisions to deny Doe I–IV's Form I-185 petitions, which were based solely on the revocation of Doe I's approved petition—were arbitrary and capricious because the reasons for the revocation of Doe I's approved petition were not the same as the reasons specified in the NOIR. The Court has not found that the NOIR, standing alone, was deficient; it is the final decision of revocation that is deficient in light of what CIS stated in the NOIR. Accordingly, the relief the Court grants will extend only to the final decision to revoke Doe I's approved petition (and the resulting decisions to deny Doe I–IV's Form I-485 petitions).

The Court rejects Plaintiffs' remaining requests for relief because they extend beyond the narrow reasons underlying the Court's decision here. There are compelling reasons to grant narrow relief in this area of the law. "Especially 'in the field of immigration,' where 'there may be sensitive issues lurking that are beyond the ken of the court,' the 'course of prudence' is to remand the case to USCIS[.]" *Berardo v. U.S. Citizenship & Immigration Servs.*, 2020 WL 6161459, at *12 (D. Or. Oct. 20, 2020) (quoting *Doe v. U.S. Citizenship & Immigration Servs.*, 239 F. Supp. 3d 297, 309 (D.D.C. Mar. 10, 2017)). The Court agrees with the Government that Plaintiffs' other forms of requested relief—limiting the remand to step two of the *Kazarian* analysis, complete vacatur of the underlying agency decisions (and possibly the NOIR), restoring them to status before the NOIR was issued, and compelling the Government to issue Plaintiffs

new immigration documents—are "extraordinary requests" that go far beyond the typical remedy in cases like this. Even if the Court is technically empowered to grant the relief Plaintiffs seek (which the Government vigorously contests), the Court declines to go further than remanding the case to the agency.

The Court will thus remand this case to CIS for further proceedings consistent with this Order. In particular, on remand CIS shall issue a new post-NOIR communication regarding Doe I's previously approved Form I-140 petition and Doe I–IV's previously denied Form I-485 petitions. CIS shall provide Doe I with a new communication regarding his Form I-140 petition within sixty (60) days of entry of judgment, with communications regarding Doe I–IV's Form I-485 petitions to follow the final decision on the Form I-140 petition.

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment is GRANTED IN PART AND DENIED IN PART and the Government's motion for summary judgment is DENIED. This matter is REMANDED to U.S. Citizenship and Immigration Services for proceedings consistent with this Order. The Clerk shall close the case.

Dated: April 25, 2022

BETH LABSON FREEMAN
United States District Judge